# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| STANLEY FOSTER,<br>　　　Petitioner, | Case No. 1:10-cv-425 |
| | Dlott, J. |
| vs. | Bowman, M.J. |
| WARDEN, LEBANON CORRECTIONAL<br>INSTITUTION,<br>　　　Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on the petition and respondent's return of writ. (Doc. 5).

## I.　FACTUAL BACKGROUND

The Ohio Court of Appeals, First Appellate District, provided the following summary of the facts that led to petitioner's conviction and sentence:[1]

> **[*P2]** Steven Blount and Foster's younger brother, Andre, waited in a parked car while Foster went in to rob the Bridgetown Mini Mart. David Jackson, a customer, was entering the store when he noticed them. Jackson testified that he saw a black man leaning into the car, an older model, and had assumed that "some sort of drug deal" was going on.
>
> **[*P3]** Jackson entered the store. As he made his purchases at the store counter, he noticed that the same man who had been leaning into the car was standing in line behind him. That man was Foster.
>
> **[*P4]** At that time, Kanu Patel was working at the store with his wife. Patel was talking on a speaker phone to his cousin Umash Patel, who was at another store.

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

The two were talking in their native language, Gujarati, a language spoken in a region of India.

[*P5] Foster waited in line behind Jackson, and then, as Jackson left the store, he asked Patel for a pack of Newport cigarettes. Patel put the pack on the counter. Foster pulled out a gun and fired a shot that just missed Patel, and he demanded money.

[*P6] Patel's wife stopped vacuuming and asked what was happening. In Gujarati, Patel told her that they were being robbed and that she should put her hands up. Through the telephone, Umash heard Patel's statement to his wife and immediately called the police to report the robbery.

[*P7] For one of the store's regular customers, Patel had kept a handwritten account of the customer's purchases and amounts owed. Patel had written the account in Gujarati on a piece of thin cardboard cut to the shape of a dollar bill and kept the account in the cash register's slot for $ 50 and $ 100 bills. So when Foster emptied the register drawers of cash and stuffed it into his pants pockets, he unwittingly took with the money Patel's handwritten account slip.

[*P8] Jackson, who had been walking away from the store when he heard the gunshot, called the police. He reported that he had heard a gunshot and thought that the store had just been robbed. Jackson said that he had seen a black man wearing a beanie hat who had been "standing by like a Cadillac or something" before the man had entered the store. Jackson described the car as an older brown or tan Cadillac.

[*P9] Blount testified that when Foster came out and got back into the car, they drove off. He saw Foster put a revolver into the glove compartment.

[*P10] Immediately, police radio broadcasts indicated that a gun had just been fired in a robbery of the store and that the robbery suspect was a black male wearing a beanie who had been "standing next to an older brown Cadillac before he went into the store."

[*P11] As soon as he received the initial broadcast, Hamilton County Sheriff's Deputy Daniel Sherman sped in his patrol car toward the store. Almost instantly, he noticed an "older style possibly brown Cadillac" driving toward him, from the direction of the store. Sherman turned his car around to follow it.

[*P12] Sherman radioed to the dispatcher, "I just turned around on an older Cadillac, I'm going northbound on Race [Road]. * * * They didn't get a better description?" He immediately recognized that the car was not a Cadillac and radioed that he was following a 1984 Oldsmobile occupied by three black men. For safety reasons, Sherman waited to pull the car over until other officers had arrived.

[\*P13] Within moments, other officers approached, so Sherman activated his overhead lights and pulled the car over.

[\*P14] Meanwhile, Green Township Police Officer Tim Icenogle had gone into the Bridgetown Mini Mart. Icenogle testified that Patel was upset and visibly shaken, and that he could not understand Patel's limited English. Patel made a gun gesture with his hand and then pointed up to the store's video camera. Icenogle reviewed the videotape of the robbery and radioed a further description of the robbery suspect to the police dispatcher.

[\*P15] Officers at the scene of the stopped Oldsmobile removed Blount and Andre from the car and patted them down. Neither of them was carrying a gun.

[\*P16] When a further police broadcast described the robbery suspect as a black male wearing a black knit cap, a gray T-shirt, and a black, possibly leather, jacket, the officers realized that the car's front passenger, Foster, matched the description. Foster was wearing a gray T-shirt and dark pants, and was sitting on a black leather jacket. And as Foster was taken from the car, officers noticed a black knit cap lying between his feet.

[\*P17] Green Township Police Officer Patrick Young patted Foster down. He noticed four large bulges in the front and rear pockets of Foster's jeans. Because he was unable to determine what was inside the pockets, and because he knew that a gun had been involved in the robbery, Young was concerned for his safety. So Young reached into Foster's pockets and discovered large wads of cash in each one.

[\*P18] In the stacks of cash, which totaled $ 2,770, police discovered the account slip that Patel had handwritten in his native language.

[\*P19] After Foster had been secured in a police car, police found a .22-caliber revolver in the Oldsmobile's glove compartment. The revolver contained four live rounds of ammunition and two empty shell casings.

[\*P20] Testing revealed gunshot residue on Foster's hands. No gunshot residue was found on Andre's or Blount's hands.

[\*P21] The black leather jacket that Foster had been sitting on was swabbed, and testing revealed the presence of his DNA, not that of his brother or of Blount. Three packs of Newport cigarettes were in the jacket's pockets.

[\*P22] Hamilton County Sheriff's Deputy Jeremy DePaoli transported Foster back to the store parking lot and had Foster stand outside the police car, about 35 feet from the store's door. Then Icenogle walked from the parking lot to the store

and motioned for Patel to come over to the door. Patel walked to the door, looked out toward the lighted parking lot, and nodded his head.

(Exhibit 13, pp. 2-5.)

## II. PROCEDURAL HISTORY

### State Trial and Appellate Proceedings

On March 23, 2007, the Hamilton County, Ohio grand jury returned an indictment charging petitioner with two counts of aggravated robbery, in violation of Ohio Rev. Code § 2911.01(A)(1), with firearm specifications, two counts of robbery, in violation of Ohio Rev. Code § 2911.02(A)(2), and one count of having weapons while under disability, in violation of Ohio Rev. Code § 2923.13. (Doc. 5, Ex. 1). Petitioner entered a plea of not guilty to all charges on March 30, 2007. (Doc. 5, Ex. 2).

On December 6, 2007, through counsel, petitioner filed a motion for speedy trial. (Doc. 5, Ex. 3). On December 10, 2007, the trial court granted petitioner's request to withdraw his speedy trial motion. (Doc. 5, Ex. 4).

On January 3, 2008, with the assistance of new counsel, petitioner filed a motion to dismiss for a violation of the speedy trial provisions of Ohio Rev. Code § 2945.71. (Doc. 5, Ex. 5). On January 23, 2008, a stipulation was entered that a parole holder was placed on petitioner from March 15, 2007 until a hearing was held on April 10, 2007. (Doc. 5, Ex. 6). Prior to trial, multiple continuances were filed by both petitioner and the state. (Doc. 5, Ex. 7).

On March 10, 2008, following a jury trial, petitioner was found guilty of one count of aggravated robbery with specifications, one count of robbery and one count of having weapons under disability. (Doc. 5, Ex. 8). Petitioner was sentenced to an aggregate sentence of twenty-six years in prison. (Doc. 5, Ex. 9).

On May 9, 2008, through the assistance of new counsel, petitioner filed a timely notice of

4

appeal to the Ohio Court of Appeals, First Appellate District. (Doc. 5, Ex. 10). Petitioner raised the following assignments of error challenging his conviction and sentence:

1. The trial [court] erred as a matter of law by overruling Appellant's motion to dismiss the indictment based upon a violation of his speedy trial rights. (S.T. Tp., pgs. 50-55)

2. The trial court erred as a matter of law by overruling Appellant's motion to suppress. (Td. 38)

3. The indictment of the Defendant was defective in that it failed to state the requisite mental state required for the commission of the offense and that the same is a structural error in the indictment pursuant to *State v. Colon.* (Td. 1)

4. The evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain Appellant's convictions for aggravated robbery, robbery and having weapons under disability. (Td. 139, 143, 144)

5. The trial court erred as a matter of law by improperly sentencing Appellant. (Td. 148)

(Doc. 5, Ex. 11). On April 10, 2009, the Ohio Court of Appeals vacated petitioner's robbery sentence and affirmed the remainder of the trial court judgment.[2] (Doc. 5, Ex. 13).

## Ohio Supreme Court

On May 13, 2009, the state filed a notice of appeal in the Ohio Supreme Court and raised the following proposition of law:

I. Robbery, R.C. 2911.02(A)(2) and aggravated robbery, R.C. 2911.01(A)(1) are not allied offenses of similar import. When their elements are compared in the abstract, without requiring an exact alignment of the elements, it is possible to commit one offense without committing the other.

---

[2] The Ohio appellate court sustained petitioner's fifth assignment of error, finding that aggravated robbery under Ohio Rev. Code § 2911.01(A)(1) and robbery under Ohio Rev. Code § 2911.02(A)(2) are allied offenses of similar import and "because the offenses in this case were committed with a single animus, the trial court erred in imposing sentences for both." (Doc. 5, Ex. 13, p. 6).

5

(Doc. 5, Ex. 15). Through counsel, petitioner filed a cross-appeal and memorandum contra to jurisdiction of the state's appeal. (Doc. 5, Ex. 16, 17). In his memorandum in support of jurisdiction of cross-appeal, petitioner raised the following propositions of law:

> I. An accused's speedy trial rights should not be tolled when the case is set for trial regardless of whether it was done at the Defendant's request, unless the other exceptions, set forth specifically in RC 2954.72, apply.
>
> II. The State cannot cure a defective indictment, under *State v.Colon*, by presenting evidence at trial that the robbery/aggravated robbery was committed purposely or knowingly, if the mens rea element of robbery is not set forth in the indictment nor is aggravated robbery a strict liability offense exempt from the holding in *Colon*.

(Doc. 5, Ex. 17). On July 29, 2009, the Ohio Supreme Court denied leave to appeal, denied leave to cross-appeal and dismissed the cross-appeal "as not involving any substantial constitutional question." (Doc. 5, Ex. 19).

## Federal Habeas Corpus

Petitioner filed the instant petition on June 28, 2010. (Doc. 1). In the petition, petitioner raises the following ground for relief:

> Ground One: Foster's speedy trial rights guaranteed by the Sixth and Fourteenth Amendments of the United States Constitutional were violated in the state courts.

(Doc. 1, p. 4).

Respondent opposes the petition. (Doc. 5). In the return of writ, respondent argues that petitioner has procedurally defaulted his ground for relief by failing to raise the claim as a federal constitutional question in the Ohio courts. *Id*. at 11. In the alternative, respondent argues that Ground One is without merit. *Id.* at 14-19.

**III.    PETITIONER'S GROUND FOR RELIEF IS PROCEDURALLY DEFAULTED AND WITHOUT MERIT.**

Through counsel, petitioner contends that his speedy trial rights under the Sixth and Fourteenth Amendments were violated in state court based on a delay of approximately a year in between his arrest and trial.[3] (Doc. 1, p. 5). He contends that the state offered a "wholly inadequate reason for the delay," that petitioner asserted his speedy trial rights twice prior to trial, and that he was prejudiced as a result of the delay. *See id.* at 9.

The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing petitioner's speedy-trial claim, relied solely on state case-law in overruling the assignment of error. (Doc. 5, Ex. 13, pp. 9-13). The court found that pursuant to Ohio Rev. Code § 2945.72(H), a 48-day period from October 23, 2007 to December 10, 2007, occurred as a result of a continuance requested by petitioner and this delay was therefore not chargeable to the state. *Id.* at 12-13. Based on this finding, the state appellate court found that petitioner's trial occurred well within the deadline imposed by Ohio's speedy-trial statute. *Id.*

As a preliminary matter, the Court must determine whether petitioner procedurally defaulted his ground for relief by failing to present the constitutional claim to the Ohio courts, as respondent has argued in the return of writ. (*See* Doc. 5, pp. 8-16). It is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the

---

[3]  Respondent contends that 346 days passed between petitioner's March 23, 2007 indictment and March 3, 2008 trial. (*See* Doc. 5, p. 20) (citing *Doggett*, 505 U.S. 647, 651-52 (1992), for the proposition that "the constitutional right to a speedy trial only takes into account the time that elapses between accusation and trial."). Petitioner, on the other hand, claims that the speedy trial right attached upon his March 14, 2007 arrest. (Doc. 1, p. 5). Petitioner also apparently disputes the trial date, arguing that he was detained for 361 days prior to trial, which he claims commenced on March 10, 2008. *Id.*

Though not necessary to its finding, the Court notes that the speedy trial attached on the date of petitioner's arrest. *See Dillingham v. United States*, 423 U.S. 64, 65 (1975) ("Invocation of the speedy trial provision . . . need not await indictment, information or other formal charge.") (quoting *United States v. Marion*, 404 U.S. 307, 321 (1971)); *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007) ("the Sixth Amendment protects against delay from the time of *arrest* when it precedes the indictment or appearance") (emphasis in original). In addition, the record

7

factual and legal underpinnings of his claims to the state courts, *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987)), meaning that petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). *See also Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature. *McMeans,* 228 F.3d at 681. Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Id.* (citing *Franklin*, 811 F.2d at 326).

The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Franklin*, 811 F.2d at 326. "While a petitioner need not cite chapter and verse of constitutional law, general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated." *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (internal citation and quotation marks omitted).

---

indicates that petitioner's trial commenced on March 3, 2008. (*See* Doc. 5, Ex. 20, p. 2). Accordingly, petitioner was detained from March 15, 2007 until March 3, 2008, 354 days prior to his trial.

8

In the instant case, it appears that petitioner procedurally defaulted his claim by failing to fairly present the claim to the Ohio courts as a federal question. Petitioner did cite to *Klopfer v. North Carolina*, 386 U.S. 213 (1967), for the proposition that "[t]he Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, and that this right is applicable to state criminal trials under the Fourteenth Amendment" on direct appeal and on further appeal to the Ohio Supreme Court. (Doc. 5, Ex. 11, p.8 & Ex. 17, p. 5) (internal quotation marks omitted). In his memorandum in support of jurisdiction, petitioner also indicated that the case involved a substantial constitutional question because "it addresses an individual's fundamental constitutional right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States and Ohio Constitutions." (Doc. 5, Ex. 17, p. 1).

However, petitioner appears to only have referenced the United States Constitution and *Klopher* in an introductory manner, before framing his speedy trial claim under Ohio's speedy trial statute.[4] In ruling on his appeal, the Ohio Court of Appeals similarly referenced *Klopfer* and the Sixth and Fourteenth Amendments before addressing petitioner's claim according to Ohio Rev. Code §§ 2945.71 – 29.45.73. (*See* Doc. 5, Ex. 13, pp. 9-13). With the exception of the above references, petitioner did not cite to any federal or state cases employing constitutional analysis, did not otherwise phrase his claims in terms of constitutional law or in terms sufficiently particular to allege a constitutional violation, or allege facts within the mainstream of constitutional law. *See McMeans*, 228 F.3d at 681.[5]

---

[4] Petitioner argued that he was not brought to trial within 270 days after his arrest as required by the Ohio Rev. Code § 2945.71, arguing that the trial court erred in failing to charge a request for a continuance of the suppression hearing against the state. (Doc. 5, Ex. 11, pp. 8-9; & Ex. 17, pp. 5-6).

[5] *See also Kerby v. Brunsman*, No. 3:08-cv-287, 2011 WL 3566121, at *10 (S.D. Ohio April 28, 2011) ("Because the restricted scope of the speedy trial arguments presented in [petitioner's] state appellate brief led the state court of appeals to address his claim as one relying solely on the provision of Ohio Rev. Code § 2945.71, Petitioner did not

Accordingly, the Court finds that petitioner's general references to his Sixth and Fourteenth Amendment right to a speedy trial did not adequately alert the state courts of the constitutional nature of his claim. *See Franklin*, 811 F.2d at 326. In any event, because it is arguable that the instant case presents a close call, the Court finds, in the alternative, that petitioner's claim is without merit.

As an initial matter, because the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treaties of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy trial statute or state case-law interpreting the Ohio statute. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). The Court only has jurisdiction to consider whether the pre-trial delay amounted to a violation of petitioner's federal constitutional speedy trial right.

The Sixth Amendment guarantees a defendant the right to a speedy trial, which involves a fact-intensive inquiry requiring the balancing of (1) "whether [the] delay before trial was uncommonly long;" (2) "whether the government or the criminal defendant is more to blame for the delay;" (3) "whether, in due course, the defendant asserted his right to a speedy trial;" and (4) "whether he suffered prejudice as the delay's result." *Doggett v. United States,* 505 U.S. 647, 651, 655 (1992); *Barker v. Wingo,* 407 U.S. 514, 530 (1972); *see also Wilson v. Mitchell,* 250 F.3d 388, 394 (6th Cir. 2001).

---

fairly present his speedy trial arguments as a federal constitutional claim to the state courts.") (citing *Franklin*, 811 F.2d at 325), *adopted*, 2011 WL 3566006 (S.D. Ohio Aug. 15, 2011); *Cox v. Warden*, No. 1:10-cv-117, 2011 WL 1980169, at *6 (S.D. Ohio, April 26, 2011) (finding speedy trial claim to be procedurally defaulted where petitioner's sole citation to federal law was to *Klopfer* with all legal argument framed in terms of the Ohio statute), *adopted*, 2011 WL 1979669 (S.D. Ohio May 20, 2011); *Nichols v. Beightler*, No. 1:10-cv-390, 2011 WL 646688, at *5 (N.D. Ohio Jan. 25, 2011) (finding that federal speedy trial claim was not fairly presented when "presented briefly and only as [a] matter of proper application of the statutory time calculations"), *adopted*, 2011 WL 679939

"The first factor serves a dual function." *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003). First, as a threshold requirement, the Court must determine that the length of delay is presumptively prejudicial. *Id.* "[T]he length of the delay, is the triggering factor because 'until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Wilson,* 250 F.3d at 394 (quoting *Barker,* 407 U.S. at 530); *see also Doggett,* 505 U.S. at 651-52. If the length of the delay is found to be "presumptively prejudicial," it must then be considered "as one factor among several" in determining whether the accused was deprived of his Sixth Amendment speedy trial right. *See Doggett,* 505 U.S. at 652 (citing *Barker,* 407 U.S. at 533-34). In *Doggett*, the Supreme Court noted that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett*, 505 U.S. at 652 n1.

Because the Ohio Court of Appeals did not address the Sixth Amendment issue, the undersigned will assume without deciding, that the delay of nearly a year satisfies the threshold inquiry under *Barker*. Accordingly, the Court below considers the length of delay "as one factor among the several in the speedy trial analysis." *Schreane*, 331 F.3d at 553; *see also Doggett,* 505 U.S. at 652.

In examining the reasons for the delay, the second factor, the Supreme Court has "made it clear that 'different weights [are to be] assigned to different reasons' for delay." *Doggett,* 505 U.S. at 657 (quoting *Barker,* 407 U.S. at 531). On the one hand, "speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable," such as when the government "may need time to collect witnesses against the accused," which is given "great weight" in the state's favor and requires a showing of "specific prejudice to the defense." *Id.* at

---

(N.D. Ohio Feb. 16, 2011).

656. On the other hand, "official bad faith in causing delay will be weighed heavily against the government," even in cases involving a relatively short delay. *Id.*

The Court continued:

Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. . . .

Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. *Thus, our toleration of such negligence varies inversely with its protractedness.* . . .

*Id.* at 656-57 (emphasis added).

The third factor requires the Court to consider whether petitioner asserted his right to a speedy trial and such an assertion "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007) (quoting *Barker,* 407 U.S. at 531-32). "Although a defendant does not waive the right to a speedy trial by failing to assert it, the degree to which the defendant has asserted the right is one of the factors to be considered in the balance. *Id.* (citing *Barker*, 407 U.S. at 531-32).

Under the fourth factor, "[a] defendant must show that 'substantial prejudice' has resulted from the delay." *Schreane*, 331 F.3d at 557 (6th Cir. 2003) (citing *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993)). In *Doggett,* the Supreme Court enumerated three forms of prejudice resulting from speedy trial violations: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired by dimming

memories and through loss of exculpatory evidence. *Doggett*, 505 U.S. at 654 (citing *Barker*, 407 U.S at 532). The Supreme Court has found the third form to be the most serious, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

In this case, upon consideration of the *Barker* factors, the undersigned is convinced that the delay in brining petitioner to trial, approximately a year following his March 14, 2007 arrest, did not deprive petitioner of his constitutional right to a speedy trial. Although petitioner does appear to have asserted his speedy trial right at two points during the state trial proceedings (*see* Doc. 1, p. 8; *see also* Doc. 5, Ex. 3 & 5), and this factor therefore weighs in his favor, petitioner has not made a sufficient showing on the balance of the *Barker* factors for the Court to find him entitled to relief.

First, the record indicates that over half of the delay occurred as a result of continuances requested by petitioner. In assessing the length of the delay, "only those periods of delay attributable to the government or the court are relevant to [petitioner's] constitutional claim." *Howard*, 218 F.3d 556, 564 (2000). Petitioner was granted a total of seven continuances accounting for approximately 184 days of the delay.[6] Therefore, the relevant period of delay for assessing petitioner's speedy trial claim is 177 days, or approximately six months. The Sixth Circuit has generally found that such a delay is not excessive. *See*, *e.g., United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (finding that a "six-and one half month delay is not excessive and does not rise to the level of constitutional violation"); *see also*, *Bennett v. Warden*, No. 2009-

---

[6] Petitioner was granted continuances on three occasions from April 18, 2007 until July 26, 2007, for plea discussions and based on petitioner's motion to suppress. (*See* Doc. 5, Ex. 7, pp. 1-3). He was also granted a twenty-five day continuance on August 30, 2007, to obtain a copy of a 911 tape prior to a suppression hearing. *Id.* at 5. Thereafter, petitioner was granted three additional continuances spanning from October 15, 2007 until December 14, 2007, in order to conduct plea negotiations and upon petitioner's request to appoint new counsel. *See id.* at 7-9.

13

cv-00622, 2011 WL 901529, at *1 (S.D. Ohio Mar. 15, 2011) (six month delay not presumptively prejudicial); *Wilcher v. Rose*, No. 95-3835, 1996 WL 262951, at *1 (6th Cir. May 16, 1996) (finding that ten and one half month pretrial delay did not create a presumption of prejudice); *Smith v. Brigano*, No. 94-3764, 1995 WL 283781, at *2 (6th Cir. May 10, 1995) (finding six and one-half month delay, even if entirely attributable to the state, is not presumptively prejudicial); *United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002) (eight-month-and-three-week delay not presumptively prejudicial).

Furthermore, the Court cannot find that the state's July 26, 2007 continuance of the suppression hearing was motivated by bad faith or was a deliberate effort to harm the defense or seek a tactical advantage. Petitioner contends that the continuance "was unreasonable because the prosecution already had more than three months to prepare for the suppression hearing" and that "the state did not provide any reason as to why they needed more time." (Doc. 1, p. 7). Even assuming, without deciding, that the continuance was the result of official negligence on the part of the prosecutor,[7] the Court finds that the delay is substantially outweighed by the delay attributable to petitioner. *See Schreane*, 331 F.3d at 554 ("the second *Barker* factor is not a search for a blameless party; instead, the concern is with whether the government or the criminal defendant is more to blame for [the] delay") (internal citations and quotation marks omitted).

---

[7] In addressing petitioner's speedy trial claim under the Ohio speedy trial statute, the Ohio Court of Appeals found that the continuance was attributable against the state:

> . . . the state does not explain *why* it had needed more time to prepare for the hearing. The mere fact that it had required the testimony of seven witnesses does not explain why the state needed five weeks, in addition to the preceding six weeks, to prepare. Aside from the number of witnesses, the state does not explain what made this particular hearing more than a "simple" one.
>
> Accordingly, we hold that the continuance granted upon the state's request did not toll the running of Foster's speedy-trial time because, on this record, we cannot say that the 35-day delay was either necessary or reasonable.

(Doc. 5, Ex. 13, pp. 11-12) (emphasis in original).

Finally, the Court finds that petitioner has not sufficiently demonstrated that he suffered prejudice because of the delay. Petitioner argues that spending a year in jail prior to trial constitutes oppressive pretrial incarceration; that petitioner was "very anxious and concerned"; and by being in pretrial custody, petitioner "was hindered in his ability to gather evidence, contact witness[es], or otherwise prepare a defense for trial." (Doc. 1, p. 9). However, petitioner has asserted prejudice only in broadest terms and the Court is unable find that his general assertions resulted in substantial prejudice. *See*, *e.g.*, *United States v. DeClue*, 899 F.2d 1465, 1470-71 (6th Cir. 1990) (finding broad assertions of prejudice insufficient to establish substantial prejudice).

With regard to whether the pretrial delay constituted oppressive pretrial incarceration, petitioner states without elaboration that "Foster spent a year in the county jail prior to trial. Therefore, Foster suffered oppressive pretrial incarceration." (Doc. 1, p. 9). As noted previously, the delay relevant to petitioner's speedy trial claim is approximately six months. *See Schreane*, 551 F.3d at 559; *Howard*, 218 F.3d at 556. Such a delay is generally insufficient to demonstrate prejudice. *See Schreane*, 331 F.3d at 559 (6th Cir. 2003) (collecting cases and noting that "[w]hen prejudice has been found, the government's delay has typically been shockingly long") (citing *Doggett*, 505 U.S. at 657 (six years); *Brown*, 169 F.3d at 351 (five and one-half years); *United States v. Graham*, 128 F. 3d 372, 376 (6th Cir. 1997) (eight years)).

Additionally, petitioner has not demonstrated that he experienced abnormal anxiety as a result of the delay[8] or that his defense was impaired. Most importantly, petitioner has not provided "any evidence of particularized trial prejudice." *United States v. Watford*, 468 F.3d

---

[8] The Court does not find persuasive petitioner's argument that firing his attorney demonstrates that he experienced abnormal concern and anxiety. (*See* Doc. 1, p. 9). In any event, such a finding would not alter the Court's determination that petitioner has not made a sufficient showing of prejudice, as he has not demonstrated that the pre-trial delay attributable to the government resulted in oppressive pre-trial incarceration or that he was actually or

15

891, 908 (6th Cir. 2006) (finding that though the length of pre-arraignment delay "may have given rise to a threshold presumption of prejudice sufficient to warrant consideration of the remaining *Barker* factors, [the petitioner] failed to sustain this presumption by adducing evidence of particularized trial prejudice"). Though petitioner states he was hindered in his ability to gather evidence, contact witnesses, and prepare a defense for trial, (*see* Doc. 1, p. 9), he has not offered any explanation of what evidence he was prevented from obtaining, what witnesses he was unable to contact, their anticipated testimony, or how the delay otherwise impaired his defense. *See*, *e.g.*, *Wood v. Vasbinder*, 310 F. App'x 861, 865 (6th Cir. 2009) (finding that petitioner had not sufficiently demonstrated prejudice because his assertion that the delay prevented him from locating witnesses was not supported by indication of what the witnesses would have testified to or how his defense was prejudiced in their absence); *cf. Redd v. Sowders*, 809 F.2d 1266, 1272 (6th Cir. 1987) (delay found to impair defense because alibi witnesses were no longer available).

However, petitioner's inability to articulate specific prejudice does not necessarily foreclose relief on his claim. In *Doggett*, the Supreme Court noted that "affirmative proof of prejudice is not essential to every speedy trial claim. . . . [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or, for that matter, identify." *Doggett*, 505 U.S. at 655-56. The Sixth Circuit has indicated that "[w]hen a defendant is unable to articulate [or demonstrate] the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced." *Schreane*, 331 F.3d at 559 (quoting *United States v. Mundt*, 29F.3d 233 (6th Cir. 1994)). If the government exercises reasonable diligence in prosecuting a case, "a defendant who cannot demonstrate how

---

presumptively prejudiced because of the delay. *See infra*, pp. 16-17.

his defense was prejudiced with specificity will not make out a speedy trial claim no matter how great the ensuing delay." *Id*. (quoting *Howard*, 218 F.3d at 564).

In the instant case, the six month delay does not give rise to a presumption that petitioner was prejudiced. *See Schreane*, 331 F.3d at 559 (collecting cases and finding that a thirteen and one-half month delay attributable to the government was insufficient give rise to presumption of prejudice). Accordingly, petitioner has failed to demonstrate that he was prejudiced by the pre-trial delay or that the delay gives rise to a presumption that excessive delay presumptively compromised the reliability of his trial.

Upon balancing the four *Barker* factors, the undersigned concludes that petitioner is not entitled to habeas corpus relief on his claim that he was deprived of his constitutional right to a speedy trial. While petitioner did assert his right to a speedy trial, the delay was not excessive and was largely attributable to continuances petitioner requested. Furthermore, petitioner has not demonstrated that he was prejudiced by the delay or that the length of delay attributable to the state was presumptively prejudicial.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief based on his single ground for relief because the Court finds the speedy-trial claim was procedurally defaulted or, in the alternative, is without merit. Therefore, it is **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in the petition, which this Court has concluded is waived and thus procedurally barred from review,

because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling. In addition, a certificate of appealability should not issue with respect to the claim addressed alternatively on the merits herein in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

      3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

                                                s/ Stephanie K. Bowman
                                                Stephanie K. Bowman
                                                United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STANLEY FOSTER,
    Petitioner,

vs.

WARDEN, LEBANON CORRECTIONAL
INSTITUTION,
    Respondent.

Case No. 1:10-cv-425

Dlott, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).